HEARD APRIL TERM, 1871.

## SMITH *vs.* KING'S MOUNTAIN RAILROAD COMPANY.

Action to recover damages for the loss of cotton deposited by plaintiff on the platform of defendants, a railroad company, at their depot, and there burned by the negligence, as alleged, of defendants. There was some evidence that the agent of the company had refused, on the application of plaintiff, to give a receipt for the cotton. The presiding Judge charged the jury, that if the company refused to receive the cotton for shipment when offered by the plaintiff they would be responsible in this action for any damage sustained in consequence: *Held*, That the charge was irrelevant, and no ground for new trial, there being no evidence that damage was sustained in consequence of such refusal.

The declaration did not charge that defendants received the cotton in their character of common carriers, and the presiding Judge charged the jury that they might find the defendants liable as such for the loss of the cotton. On appeal by defendants, *held*, that in this there was error, and new trial ordered.

BEFORE THOMAS, J., AT YORKVILLE, MARCH TERM, 1870.

This was an action on the case. The declaration contained three counts. The first charged that in consideration that plaintiff, at defendants' request, delivered to them one hundred bales of cotton; de-

fendants promised to take due and proper care of the same; that they did not take such care of the cotton, and that through their negligence it was burned. The second charged that defendants, at their request, had the care of the cotton, and did not take due care of the same, whereby it was lost to the plaintiff. The third was as follows:

"For that whereas, the said defendants have been and still are common carriers of cotton and other articles, for hire, by railway, from Yorkville to Chester Court House, in the State aforesaid; that said defendants are possessed of a depot in Yorkville, at the terminus there of their said railway, known as the King's Mountain Railroad, for the storage and reception of cotton, grain and other articles to be transported on said road; that on the platforms and sheds of said depot, said King's Mountain Railroad Company commonly and usually suffered and permitted farmers and planters, hauling and bringing cotton, grain and other produce to the town of Yorkville for sale, there to put and place said cotton, grain or other produce, there to remain until sold in Yorkville, and then to be shipped for the purchaser over said road to the town of Chester, and that said King's Mountain Railroad Company, in consideration of the premises, and that planters and farmers as aforesaid would so place their cotton, grain and other produce on the platforms and sheds of the said depot at Yorkville, undertook and faithfully promised to take due and proper care thereof, and deliver the same when sold to the purchasers thereof. And said plaintiff in fact says that on, &c., at, &c., first aforesaid, he being one of the planters of York District, and desirous of selling his cotton in the town of Yorkville aforesaid, caused to be hauled to said town and placed on the platforms of said depot of said company, one hundred bales of cotton, of him said plaintiff, of the value of four thousand dollars, there to remain until sold and delivered by him; and that in consideration thereof, said defendants then and there undertook and faithfully promised they would take due and proper care of said one hundred bales of cotton until sold by plaintiff and delivered by him. And said plaintiff says that after placing said one hundred bales of cotton on the platforms of the depot of defendants, as aforesaid, he bargained to sell the same to W. D. & J. C. Miller, of Yorkville. But the said defendants not regarding their duty in that behalf, did not nor would take due and proper care of said one hundred bales of cotton so placed at their depot as aforesaid, but wholly neglected so to do, whereby plaintiff was prevented from delivering the same to

said W. D. & J. C. Miller, and by and through the negligence, care-lessness and improper conduct of said defendants, said one hundred bales of cotton, of the value aforesaid, were burned and destroyed and wholly lost to the said plaintiff."

The brief upon which the case was heard in this Court contained, besides a copy of the declaration, copies of notes of the evidence, the report of the presiding Judge, and the notice and grounds of appeal.

The evidence tended to show that it was the custom at Yorkville for planters bringing cotton to that town for sale there to deposit it on the platform of defendants at their depot, where it would remain until sold and shipped by the purchaser ; that the platform was three or four feet from the track of defendants' road; that in March, 1860, the plaintiff hauled to Yorkville for sale there eighty-one bales of cotton, which he deposited on defendants' platform ; that a few days after the last lot was deposited, the plaintiff bargained with W. D. & J. C. Miller, of Yorkville, to sell the cotton to them; that on the same day, and before the sale was completed, twelve of the eighty-one bales were burned on the platform ; that the fire commenced immediately after the arrival at the depot of an engine of defendants ; that the day was windy ; that the spark catcher of the smoke stack of the engine was so defective as to allow big sparks to escape, and that the engine, when it ran up by the side of the platform, was throwing off sparks freely.

The plaintiff testified that the President of the company showed him where to deposit his cotton on their platform, and that before the cotton was burned he applied to the agent of the company for a receipt for the cotton, and it was refused. The President and agent denied these statements.

The verdict was for the plaintiff for $1,330.

His Honor, the presiding Judge, made a report of the case, which is as follows :

" This action was brought because the plaintiff alleged that the defendant had burned his cotton through negligence in not providing their engine with an efficient spark-catcher. The cotton was on the platform of the depot at Yorkville. The plaintiff stated that he demanded a receipt for the cotton on the day it was burned, and failing to get one, he was engaged in selling it, when it took fire, as the engine came up. He had bargained it, and they were only waiting for the scales to weigh it. No money had been paid, or any of the cotton transferred. It was proven that the custom of cotton buyers was

not to consider cotton sold until weighed, as it was sold by the pound.

"The platform had been used by the planters of York as a place of deposit for their cotton. Plaintiff said that the President of the road requested him to haul his there. He had been in the habit of hauling to Columbia.

"The spark-catcher was proven to be in bad order, and the fire occasioned by it.

"The last clause of the declaration will be appended to this report."

The defendants appealed to this Court on the grounds:

1. Because, inasmuch as the evidence showed that the railroad company had never contracted to receive and keep the plaintiff's cotton for him, no liability attached to the company as bailee, and the verdict of the jury was erroneous.

2. Because, even if the company did undertake the custody of the cotton, there is no pretence that they were to be paid for so doing; and as a mere naked depositary they could only have been held liable, had the loss of the cotton been occasioned by gross negligence on their part, of which there was no evidence before the jury.

3. Because his Honor, the presiding Judge, erred in charging the jury that if the company refused to receive the cotton for shipment when offered by the plaintiff, they would be responsible in this action for any damage which the plaintiff sustained in consequence thereof; although there is no charge in the plaintiff's declaration that the company ever refused to receive the cotton.

4. Because, although the plaintiff, in his declaration, does not charge that the company received the cotton in the character of common carriers, his Honor charged the jury that they might find the company liable as such. for the loss of the cotton, in which charge it is respectfully submitted there was error.

5. Because his Honor refused, when requested by defendant's counsel, to charge the jury that inasmuch as the declaration contains no allegation of a refusal on the part of the railroad company to receive the plaintiff's cotton, the said company could not be held liable for such refusal, even if the same had been established by the evidence, in which, it is submitted, his Honor erred.

6. Because his Honor refused, when requested in the same manner, to charge the jury that if the plaintiff had ordered the shipment of the cotton, and subsequently contracted for the sale of the

same, that it amounted to a revocation of the order to ship, in which it is also submitted his Honor erred.

7. Because the verdict of the jury was contrary to the law and evidence.

*Smith, Moore,* for appellants.
*Wilson,* contra.

Sept. 15, 1871.   The opinion of the Court was delivered by

WILLARD, A. J.   The action below was case for negligence in the care of property delivered to defendants for transportation, whereby such property was in part destroyed by fire.

Under the declaration, plaintiff could have recovered, though it should appear that the fire that caused the damage had not originated through the negligence of defendant, provided he made it to appear that at the time of the injury the defendants were charged with its protection, and that through want of a due discharge of this duty the property had become exposed to the fire that caused the damage.

The evidence disclosed the fact that the fire was communicated by sparks from the defendant's locomotive engine.   There was evidence tending to show that the sparks issued from the engine in consequence of defective condition of the spark-catcher.   The evidence also involves a question, whether there was negligence in placing the property, or allowing it to remain, in the position it occupied relative to the engine, as amounting to an imprudent exposure.   The property was cotton, and its position was on an open platform, close by the track on which the engine must necessarily pass.

The solution of these questions, in their bearing on the liability of defendants, depended, in some respect, on the question, whether they were charged with custody of the property as common carriers, or in any other character.   If they were so charged, it was not necessary to trace the fire to the defective condition of their engine, provided there was negligence on their part in allowing the property to be unduly exposed to the fire.   If, on the other hand, the property must be regarded as in the custody of plaintiff, then it became necessary to show that the fire originated with the defendants, through their negligence.   Assuming that the plaintiff was alone responsible for the position and exposure of the property, then it became a question, apart from the frame of the declaration, whether he was guilty of negligence that conspired to produce the damage.

It is impossible for us to determine, from the case before us, what view of the legal bearing of these questions of fact, raised by the evidence, was presented to the jury. It appears probable that the case was submitted to the jury as wholly depending on the question whether the defendants were liable as common carriers. This is an inference from what is said about the charge, the charge not being before us. If such was the aspect presented, then we must conclude that the verdict was based on the conclusion that defendants were common carriers. We must also conclude that the question whether the plaintiff was guilty of negligence, which conspired to produce the damage, was not passed upon by the jury, for that question would naturally arise only in the event that the defendants were held not to be responsible for the custody of the property at the time of the fire.

This case comes to us on grounds of appeal, and the report of the Circuit Judge, in conformity with the former practice in the case of appeals to the Court of Appeals, having been tried and the appeal taken before the Code of Procedure went into operation. This mode of bringing up cases, though imposing an onerous duty on the Judge, was, when that duty was carefully performed, well adapted to the Court of Appeals, as that Court considered both matters of law and fact, and looked to the substantial justice of the case. We are, however, confined to a review of the decisions and rulings of the Circuit Judge on points of law involved in the case. If we find that there was error in the rulings, we have then to ascertain whether such error may have affected the verdict. Where the rulings or charge lay down an abstract proposition of law, its merits can generally be examined independently of the other rulings or directions given in the case, both as it regards its correctness and its pertinency to the issue in hand. But where the Judge in charging the jury applies the law to the evidence, by declaring the relative rights of the parties, in the event of the finding of a matter of fact, unmixed with any question of law, it is generally important that either the whole charge, or an outline of the view presented, should be brought before us, in order to ascertain the bearing of any particular proposition of law involved, that may be the subject of review.

The case in hand appears to be one of the latter class. This conclusion is not drawn from the statements of the report of the Circuit Judge, for that is entirely silent as it regards the directions given to the case in point of law, but is drawn from the statements in the

grounds of appeal in view of the silence of the report on the subject. The matters of fact set forth in the report are no aid to us here, as we can only deal with questions of law.

Deriving our conclusions, then, as best we may, from the grounds of appeal, we proceed to consider the special matters presented by these grounds.

The first and second grounds involve only the correctness of the verdict in point of fact, and cannot be considered here, as we have repeatedly held.

The third ground is an alleged error, in charging that if the company refused to receive the cotton for shipment when offered by the plaintiff, they would be responsible for any damage which the plaintiff sustained in consequence thereof. The proposition is irrelevant to the case, as there was no damage shown as the result or consequence of the refusal of the defendants to receive the goods. Assuming the truth of the plaintiff's case, the whole damage was the consequence of negligence as to the condition and use of the defendants' engines, a cause entirely independent of the one involved in the statement of the charge. It is possible that the jury may have mistaken the bearing of this proposition, but that fact is not made out before us.

The fourth ground is as follows:

"Because, although the plaintiff, in his declaration, does not charge that the company received the cotton in the character of common carriers, his Honor charged that they might find the company liable as such for the loss of the cotton." It is very difficult to determine what inference the jury would naturally draw from this statement, if made in the terms here laid down. They might have regarded it simply as a ruling that the plaintiff was not to be prejudiced by the want of a formal averment in his declaration, or they might have concluded that the Court had found in the case sufficient facts undisputed to warrant the legal conclusion that the defendants were chargeable as common carriers. The expression "that they might find the company liable" implied that they were at liberty to do so. If it was to be understood that under the evidence they were at liberty so to find, it was, in effect, taking the question of fact out of the hands of the jury, and so they would be apt to consider. In the imperfect state of the report, we cannot but conclude that the latter would be the natural inference for the jury to draw from the statement. Upon this ground there must be a new trial.

The fifth and sixth grounds involve matters not pertinent to the real issue before the jury. The seventh, and last, is general and not entitled to particular consideration.

There must be a new trial.

*Wright*, A. J., concurred.

*Moses*, C. J., absent at the hearing.